20-1371-cv
Cavello Bay Reinsurance Ltd. v. Shubin Stein

# United States Court of Appeals
# for the Second Circuit

AUGUST TERM 2020
No. 20-1371

CAVELLO BAY REINSURANCE LIMITED,
Plaintiff-Appellant,

v.

KENNETH SHUBIN STEIN, SPENCER CAPITAL LIMITED, FKA SPENCER CAPITAL
HOLDINGS LTD., SPENCER CAPITAL HOLDINGS LTD.,
Defendants-Appellees.

ARGUED: NOVEMBER 13, 2020
DECIDED: JANUARY 25, 2021

Before:      JACOBS, POOLER, BIANCO, Circuit Judges.

Cavello Bay Reinsurance Ltd. appeals from the judgment of the United States District Court for the Southern District of New York (Karas, J.), dismissing its claims of securities fraud for failure to plead a domestic application of the law. On appeal, Cavello Bay argues that the parties' private investment agreement

was completed in New York, and that its claims have extensive domestic contacts.

We AFFIRM.

_____

SANDRA D. HAUSER, Dentons US LLP, New York, NY (Anthony B. Ullman, on the brief), for Plaintiff-Appellant.

LEA HABER KUCK, Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY (Colm P. McInerney, on the brief), for Defendants-Appellees Spencer Capital Ltd. and Spencer Capital Holdings, Ltd.

ROBERT A. O'HARE Jr., O'Hare Parnagian LLP, New York, NY, for Defendant-Appellee Kenneth Shubin Stein.

DENNIS JACOBS, Circuit Judge:

In a private offering, a Bermudan corporation bought shares in a Bermudan holding company that operates out of New York and invests in U.S. insurance services. The buyer was plaintiff-appellant Cavello Bay Reinsurance Ltd. The seller was defendant-appellee Spencer Capital Ltd., which is owned by defendant-appellee, Kenneth Shubin Stein. Spencer Capital's pitch deck for the offering represented that a management fee to a third party was tied to Spencer

2

Capital's profits; in fact, the fee was tied to the company's book value. The third party is a Delaware entity also owned by Shubin Stein.

Cavello Bay sued under the Securities Exchange Act to recover its investment. The district court dismissed the suit on two independent grounds: (1) the parties' transaction was not "domestic" under Absolute Activist Value Master Fund Ltd. v. Ficeto, 677 F.3d 60 (2d Cir. 2012), and (2) even if the transaction was domestic, Cavello Bay's claims are still impermissibly "so predominantly foreign" under Parkcentral Global HUB Ltd. v. Porsche Automobile Holdings SE, 763 F.3d 198 (2d Cir. 2014).

Section 10(b) of the Securities Exchange Act does not apply beyond U.S. borders. But, in a mostly border-less economy, a plaintiff is allowed some room for a foreign dimension to its claims. Assuming (without deciding) that the transaction was "domestic," we agree with the district court that the claims are predominantly foreign, and affirm.

## I

The Amended Complaint's allegations ping-pong between New York and Bermuda. A summary of the parties, their businesses, and their communications (as alleged) follows.

Spencer Capital is a private holding company organized under Bermudan law, with its principal place of business in New York. It enjoys "exempted" status in Bermuda, which affords limited privileges to do business there. The company maintains an investment portfolio consisting of U.S. insurance-related assets. The portfolio is managed by Spencer Management--a Delaware entity--pursuant to an investment management agreement. Both companies are controlled by Shubin Stein, who is the CEO of Spencer Capital and the owner/manager of Spencer Management.

Cavello Bay, which is likewise organized under Bermudan law, has its principal place of business in Bermuda. It is a subsidiary of Enstar Group Ltd., a Bermudan "global insurance group," to which Spencer Capital pitched the offering. App'x 19.

4

Early in 2015, Spencer Capital approached Cavello Bay, through Enstar, with a private offering. Spencer Capital sought to raise $75 million in capital from potential private investors by selling Class A preferred shares.

Enstar's Investment Committee, on behalf of Cavello Bay, decided to invest $5 million for 250,000 shares. Spencer Capital sent a draft subscription agreement from New York. Cavello Bay signed the agreement in Bermuda; then, as instructed, emailed it to Shubin Stein and a New York financial advisory firm. Shubin Stein countersigned the agreement in New York on Spencer Capital's behalf, and the advisory firm emailed it back to Cavello Bay. The executed agreement was also physically mailed back to Bermuda (as Cavello Bay represented at oral argument). The parties transferred title to the shares at the closing in Bermuda.

Spencer Capital's shares did not trade on a domestic or foreign exchange. The parties' subscription agreement--which states that it is governed by New York law--provides that the shares be issued in accordance with the Securities Act of 1933. The shares were also deemed "restricted," such that registering

them with the Securities and Exchange Commission ("SEC") was a prerequisite to resale.

Shubin Stein pitched the investment via phone from New York. He sent a PowerPoint presentation titled "Spencer Capital Holdings Primer" to Cavello Bay in Bermuda. The Primer misrepresented Spencer Capital's fee arrangement with Spencer Management, and was not corrected prior to closing. In particular, the Primer represented that the "incentive" management fee was "25% of profits above an 8% growth in book value per share," mixing up profit with book value. App'x 22–23.

Cavello Bay understood the fee as tied to financial gain from operational activities or returns on investment. In fact, the fee was calculated as 25% of the increase in Spencer Capital's book value, so that, assuming nothing else affected book value, 25% of the funds received through the offering was paid to Spencer Management. Thus, in May and June 2015, Spencer Capital, while operating at a loss, paid Spencer Management $4.4 million in fees from the funds Spencer Capital raised in the offering by selling shares to private investors, including Cavello Bay.

The Amended Complaint asserts several claims under the Securities Exchange Act: a § 29(b) claim for rescission against Spencer Capital based on an underlying § 10(b) violation; claims under § 10(b) and Rule 10b-5 against Spencer Capital and Shubin Stein; and a claim under § 20(a) for control person liability against Shubin Stein.

## II

The district court granted the defendants' motions to dismiss the case on two independent grounds. Because the parties incurred irrevocable liability in Bermuda, the transaction was not "domestic" under Absolute Activist. And even if the transaction was domestic, Cavello Bay's § 10(b) claims are still "so predominantly foreign" as to be impermissibly extraterritorial under Parkcentral. Cavello Bay therefore failed to plead a § 10(b) claim, and, without a predicate Securities Exchange Act violation, the claims under § 29(b) and § 20(a) were dismissed as well.

We review de novo the dismissal of a complaint under Rule 12(b)(6), "accepting all of the complaint's factual allegations as true and drawing all

7

reasonable inferences in the plaintiff['s] favor." Forest Park Pictures v. Universal Television Network, Inc., 683 F.3d 424, 429 (2d Cir. 2012). We may also consider documents attached to the complaint or incorporated by reference. Tongue v. Sanofi, 816 F.3d 199, 209 (2d Cir. 2016) (quoting ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007)).

A complaint must state a claim "that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Here, the transaction arguably took place in the United States. Cavello Bay argues that the subscription agreement became binding when it was signed in New York; Spencer Capital argues that it became binding under New York law only when sent to Bermuda and received there. The particulars of this case illustrate how locating the "meeting of the minds" can be arranged or confused by the parties, or can become enmeshed in state contract law. Absolute Activist,

8

677 F.3d at 68 (quotation omitted). Here, the place of transaction is difficult to locate, and impossible to do without making state law.

For that reason, we affirm solely on the ground that Cavello Bay's claims are so predominantly foreign under Parkcentral. We therefore assume, without deciding, that the parties' transaction was domestic under Absolute Activist.

**A**

Unless a security is listed on a domestic exchange, a domestic transaction is a necessary element of a § 10(b) claim. Morrison v. Nat'l Austl. Bank Ltd., 561 U.S. 247, 267 (2010); see also Absolute Activist, 677 F.3d at 69 (articulating the "irrevocable liability" test for determining when a transaction is "domestic"). But the presence of a domestic transaction alone cannot satisfy the statute's geographic requirements; claims must not be "so predominantly foreign as to be impermissibly extraterritorial." Parkcentral, 763 F.3d at 216.

Prior to Morrison, this Circuit used a conduct-and-effects test to assess the extraterritorial reach of § 10(b). The test considered an "admixture" of "(1) whether the wrongful conduct occurred in the United States, and (2) whether the

9

wrongful conduct had a substantial effect in the United States or upon United States citizens." Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 171 (2d Cir. 2008), aff'd on other grounds, 561 U.S. 247 (2010) (quotation and citations omitted). The Supreme Court criticized that test as hard to administer or apply, and liable to yield unpredictable results. Morrison, 561 U.S. at 260–61. It opted instead for a bright-line rule that limits § 10(b)'s reach to "transactions in securities listed on domestic exchanges, and domestic transactions in other securities." Id. at 267.

Parkcentral, which holds that § 10(b) does not reach claims that are predominantly foreign, is a gloss on Morrison's rule. That rule directs courts to use the "focus" of the statute to determine whether a case involves a domestic application of § 10(b). 561 U.S. at 266. The focus is "upon purchases and sales of securities in the United States," not "upon the place where the deception originated." Id. As the Supreme Court later clarified, "if the conduct relevant to the focus occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory." RJR Nabisco, Inc. v. European Cmty., 136 S. Ct. 2090, 2101 (2016). Put

10

differently, "courts must evaluate whether the domestic activity involved implicates the 'focus' of the statute." Prime Int'l Trading, Ltd. v. BP P.L.C., 937 F.3d 94, 102 (2d Cir. 2019) (quoting Morrison, 561 U.S. at 266), cert. denied, 141 S. Ct. 113 (2020).

Parkcentral's so-foreign inquiry must be viewed that way. Its facts are illuminating. The dispute involved complex derivatives transactions called securities-based swap agreements that were entered into in the United States. 763 F.3d at 201. A swap agreement is a "private contract between two parties in which they agree to exchange cash flows that depend on the price of a reference security." Id. at 205 (quotation omitted). Because it was a separate financial instrument from the underlying reference security, it did "not involve the *actual ownership, purchase, or sale*" of that security. Id. at 206 (emphasis added).

Using securities-based swaps, the Parkcentral plaintiffs shorted the stock of Volkswagen AG, a German company that traded only on foreign exchanges. The defendant, Germany's Porsche Automobil Holding SE, allegedly misled investors by denying that it planned to acquire a controlling interest in Volkswagen. Id. at 202–03. When Porsche announced such a plan, Volkswagen

11

stock rose, and the plaintiffs lost money.  Id. at 205.  In short, the security at issue was wholly foreign, and because of the structure of the swap agreements, the plaintiffs had purchased none of it; and Porsche was neither party nor participant to the swap transactions.  Id. at 201.

Parkcentral ruled that the complaint stated an impermissibly extraterritorial claim despite the presence of a domestic transaction.  For even if a transaction occurs in the United States, the features and incidents of the transaction may nevertheless be so foreign that it is not regulated by § 10(b).

This illustrates two points.  Morrison's "domestic transaction" rule operates as a threshold requirement, and as such may be underinclusive.  Id. at 220–21 (Leval, J., concurring).  Parkcentral nonetheless uses Morrison's focus on the transaction rather than surrounding circumstances, and flexibly considers whether a claim--in view of the security and the transaction as structured--is still predominantly foreign.

The above principles guide our analysis of Cavello Bay's claims below.

**B**

The claims here are based on a private agreement for a private offering between a Bermudan investor (Cavello Bay) and a Bermudan issuer (Spencer Capital).  Cavello Bay purchased restricted shares in Spencer Capital in a private offering.  The shares reflect only an interest in Spencer Capital, and they are listed on no U.S. exchange and are not otherwise traded in the United States.

Their main link to the United States is the subscription agreement's restriction clause requiring Cavello Bay to register the shares with the SEC (or meet an exemption) should Cavello Bay wish to resell them.  While that clause may set up a future invocation of U.S. law, it operates as a mere contractual impediment to resale, conditioning resale on the invocation of U.S. law by a party that has made the purchase in a way that avoids regulation by the United States.  Cavello Bay provides no reason to think an SEC registration requirement--contingent and future--triggers some U.S. interest or other interest that the statute is meant to protect (the designation of New York law too is neither here nor there).

Cavello Bay seeks access to a domestic forum and judicial resources; but the transaction is structured to avoid the bother and expense (and taxation) of U.S. law. If either of these sophisticated institutional investors had wanted the regulatory hand of U.S. law, they could have bargained for it and structured a U.S. transaction. The transaction implicates only the interests of two foreign companies and Bermuda. Although Spencer Capital allegedly solicited some U.S. investors, that means no more than that someone (else) might have an appropriately domestic claim.

Providing a domestic forum ought to enhance confidence in U.S. securities markets or protect U.S. investors. See Superintendent of Ins. of N. Y. v. Bankers Life & Cas. Co., 404 U.S. 6, 12 (1971); see also S.E.C. v. Zandford, 535 U.S. 813, 819 (2002); Parkcentral, 763 F.3d at 209. Here, it would do neither.

*\*\**

Most of the allegations on which Cavello Bay relies are vestiges from our "now-defunct conduct and effects test." Absolute Activist, 677 F.3d at 70. Thus, Cavello Bay alleges that Spencer Capital: made the misstatement from New York (vis-à-vis Shubin Stein); planned to use the funds to invest in U.S. insurance

14

services; had its principal place of business and CEO and directors in New York; and was managed by a U.S. company. But that is not enough; "it is a rare case of prohibited extraterritorial application that lacks *all* contact with the territory of the United States." Morrison, 561 U.S. at 266. The contacts that matter are those that relate to the purchase and sale of securities.

Cavello Bay also points to allegations that the parties' communications executing the agreement were between New York and Bermuda. Cavello Bay, for example, sent the signed agreement to Shubin Stein in New York who countersigned it there. Such considerations bear upon the threshold question whether the purchaser or seller incurred irrevocable liability in the United States, thereby rendering the transaction "domestic." See Absolute Activist, 677 F.3d at 68. But acts evincing contract formation do not resolve the question whether the claims are nevertheless so predominantly foreign.

Cavello Bay mistakenly likens this case to Giunta v. Dingman, 893 F.3d 73 (2d Cir. 2018). Giunta too involved a misrepresentation made in connection with a private investment agreement; however, the plaintiff there was a U.S. citizen. Id. at 77, 82. "The only foreign component present in the formation of the

15

[a]greement was the eventual registration of the shares with the appropriate Bahamian authorities, an act that [the defendant] agreed to undertake per the [a]greement." Id. at 82–83 (quotation omitted).

Cavello Bay has failed to plead a domestic application of § 10(b). And because Cavello Bay does not challenge the decision to dismiss its § 29(b) and § 20(a) claims as a consequence of that, we affirm the entire judgment.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is

**AFFIRMED.**